**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| THE YOKOHAMA TRADING, INC., and TOM SEKIGAMI, individually, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Case No. 12 C 3438 ) |
| C&K AUTO IMPORTS, INC. & C&K AUTO IMPORTS SOUTH, INC., and DORON SAUER, | ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Plaintiffs The Yokohama Trading, Inc. and Tom Sekigami (collectively, "Plaintiffs") filed an eight-count Second Amended Complaint against Defendants C&K Auto Imports, Inc., C&K Auto Imports South, Inc., and Doron Sauer (collectively, "Defendants"). (R. 27, SAC.) In the Second Amended Complaint, Plaintiffs allege the following: Count I - Breach of Contract; Count II - Common Law Fraud; Count III - Fraudulent Misrepresentation against C&K; Count IV - Intentional Interference with Existing Contracts against C&K; Count V - Intentional Misrepresentation against C&K; Count VI - Negligence against C&K; Count VII - Conversion or in the Alternative Trespass to Chattel; and Count VIII - Rescission against C&K. Defendants move to dismiss Plaintiffs' Second Amended Complaint for lack of personal jurisdiction, improper venue, failure to join an indispensable party, or on *forum non conveniens* grounds. (R. 28, Mot.) For the following reasons, the Court dismisses Plaintiff's Second Amended Complaint for lack of personal jurisdiction without prejudice.

**BACKGROUND**

Defendants C&K Auto Imports and C&K Auto Imports South are New Jersey corporations organized under the laws of New Jersey. (R. 28-1, Sauer Cert. ¶ 1.) They are in the business of selling wholesale and retail vehicles. The principle place of business of each C&K corporation is in New Jersey. (*Id.*) C&K Auto Imports South has an operation in Florida as well. (*Id.*) Both C&K entities are not registered or licensed to do business in Illinois. (*Id.* ¶ 3.) Neither corporation has ever had a facility located in Illinois. (*Id.*) Defendant Doron Sauer is the Chief Executive Officer of both C&K Auto Imports and C&K Auto Imports South. (*Id.* ¶ 2.) Mr. Sauer lives in New Jersey and is a resident of New Jersey. (*Id.* ¶ 2.) He is a licenced automobile dealer in both New Jersey and Florida. (*Id.* ¶ 4.)

Plaintiff Tom Sekigami, the President and Owner of The Yokohama Trading Company, is a resident of the State of Illinois. (R. 32-1, Sek. Aff. ¶¶ 1-2.) The Yokohama Trading Company is located in Deer Park, Illinois and incorporated in Illinois. (*Id.* ¶ 3; SAC ¶ 1.)

In December 2009, Mr. Sekigami discussed with Defendants, via email, the possibility of purchasing a 2008 Mercedes Benz CL 65 AMG (the "Vehicle"). In December 2009, the Vehicle was in Florida. (*Id.* ¶ 9.) The parties disagree regarding who initiated the communication and how the negotiations regarding the purchase of the Vehicle progressed. According to Defendants, on or about mid-December 2009, Mr. Sekigami contacted Defendants in Florida via email to inquire about the availability of the Vehicle. (*Id.* ¶ 6.) Specifically, Mr. Sekigami spoke with Joshua Sauer, Doron Sauer's son who works at Defendants' Florida facility. (*Id.* ¶ 5.) In late December 2009, Mr. Sekigami contacted Defendants in Florida again and spoke with Doron Sauer. (*Id.* ¶ 8.) Mr. Sekigami offered to purchase the Vehicle for $110,000, but Doron

Sauer rejected the offer. (*Id*. ¶ 8.) According to Doron Sauer, Mr. Sekigami contacted Defendants in New Jersey at the end of December 2009 to further inquire about purchasing the Vehicle. (*Id*. ¶ 10.) In January of 2010, the parties agreed on a purchase price of $120,000 for the Vehicle. (*Id*.)

According to Plaintiffs, on December 14, 2009, Joshua Sauer contacted Mr. Sekigami, in response to an email that Mr. Sekigami sent to Auto Trader, the host of the website www.autotrader.com ("AutoTrader.com"), which included an advertisement for the Vehicle. (Sek. Aff. ¶¶ 7-8.) Joshua Sauer's email conveyed to Mr. Sekigami that the Vehicle was available, had no damage, and was a perfect car with no blemishes. (*Id*. ¶ 49.) Mr. Sekigami exchanged multiple additional emails with Joshua Sauer about possibly purchasing the Vehicle. (*Id*. ¶¶ 9-15.) Joshua Sauer sent Mr. Sekigami a copy of the Car Fax report for the Vehicle which indicated the Vehicle had 18,500 miles rather than 17,000 as advertised in the Auto Trader advertisement. (*Id*. ¶ 24.) When Mr. Sekigami advised Joshua Sauer about this discrepancy, Joshua Sauer informed Mr. Sekigami that the Vehicle was like new, with new tires and a recent oil change. (*Id*. ¶ 26.) Mr. Sekigami agreed to purchase the Vehicle for $120,000. (*Id*. ¶ 34.) Mr. Sekigami asserts that he never had a conversation with Doron Sauer during December of 2009. (*Id*. ¶ 28.)

The parties both state that Defendants prepared the Bill of Sale for the Vehicle in Florida on January 19, 2010 and sent it, via email, to Mr. Sekigami in Illinois. (Sek. Aff. ¶ 35; Sauer Cert. ¶ 10.) Mr. Sekigami executed the Bill of Sale in Illinois and returned it to Defendants in Florida. (*Id*. ¶ 36.) Mr. Sekigami wired funds to Defendants in Florida from a bank in Illinois. (*Id*. ¶ 39.) Mr. Sekigami instructed Defendants to send the title for the Vehicle to a company in

3

Jamaica, New York. (Sauer Cert. ¶ 11.) Defendants never intended to and did not send the title for the Vehicle to Illinois. (*Id*.) Defendants prepared to send the vehicle to Tokyo, Japan via air freight from John F. Kennedy Airport, New York. (*Id*. ¶ 12.) At no point did Defendants plan to deliver the Vehicle to Illinois. (*Id*.)

After sending the funds to Defendants, Mr. Sekigami learned that the Vehicle was inoperable and required a major engine repair. (Sek. Aff. ¶¶ 40-41.) Defendants informed Mr. Sekigami that the Vehicle was no longer covered by the Mercedes Benz warranty. (*Id*. ¶ 46.) Mr. Sekigami requested that Defendants return his money. (*Id*. ¶ 51.) Defendants refused. (*Id*.) Plaintiffs filed their initial Complaint on May 7, 2012 seeking a refund of their money as well as interest, punitive damages, and attorney's fees.

On May 11, 2012, the Court dismissed Plaintiffs' Complaint *sua sponte* for failing to sufficiently plead diversity jurisdiction because Plaintiffs failed to allege the citizenship of each of the parties. (R. 4.) Plaintiffs failed, for example, to identify the citizenship of each member of the limited liability company parties, including Defendant Mercedes Benz USA LLC. (*Id*.) Plaintiffs filed an Amended Complaint on May 30, 2012. (R. 5.) The Court dismissed the Amended Complaint on May 31, 2012 because Plaintiffs once again failed sufficiently to plead complete diversity. (R. 6.) Plaintiffs filed their Second Amended Complaint on February 26, 2013, which no longer included Mercedes Benz USA LLC as a Defendant and which identified Plaintiff The Yokohama Trading as a corporation rather than a limited liability company.

## ANALYSIS

I. **Personal Jurisdiction**

    A. **Legal Standard**

Where, as here, a court's subject matter jurisdiction is based on diversity of citizenship, the court may exercise personal jurisdiction over a defendant only if personal jurisdiction would be proper in an Illinois court. *See Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). "A state's exercise of personal jurisdiction is also subject to the demands of the Fourteenth Amendment's due process clause" and "[b]ecause Illinois permits personal jurisdiction if it would be authorized by either the Illinois Constitution or the United States Constitution, the state statutory and federal constitutional requirements merge." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010). Looking to the federal constitutional requirements, it is well-established that the due process test for personal jurisdiction requires that a defendant have minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945) (citations omitted). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240, 2 L. Ed. 2d 1283 (1958); *see also Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012); *Colo'n v. Akil*, 449 Fed. Appx 511, 514 (7th Cir. 2011); *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assoc. of Houston Metroplex, P.A.*, 623 F.3d 440, 444 (7th Cir. 2010).

Two types of personal jurisdiction exist — general and specific. *See Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414-16, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984); *Abelesz v. OTP Bank,* 692 F.3d 638, 654 (7th Cir. 2012). "General jurisdiction is for suits neither arising out of nor related to the defendant's contacts with the State, and is permitted only where the defendant conducts continuous and systematic general business within the forum state." *GCIU–Emp'r Ret. Fund,* 565 F.3d at 1023; *see also Helicopteros Nacionales de Colombia,* 466 U.S. at 416. On the other hand, "[s]pecific personal jurisdiction is appropriate when the defendant purposefully directs its activities at the forum state and the alleged injury arises out of those activities." *Mobile Anesthesiologists,* 623 F.3d at 444; *see also Abelesz,* 692 F.3d at 654 ("Specific jurisdiction is jurisdiction over a specific claim based on the defendant's contacts with the forum that gave rise to or are closely connected to the claim itself.").

Here, Plaintiffs do not argue that general jurisdiction exists, but instead maintain that they have established specific jurisdiction over Defendants concerning their claims.[1] The "court's exercise of specific jurisdiction requires that the defendant's contacts with the forum state relate to the challenged conduct." *Felland,* 682 F.3d at 673. There are three requirements to establish specific jurisdiction: "(1) the defendant must have purposefully availed himself of the privilege of conducting business in the forum state or purposefully directed his activities at

---

[1] Plaintiffs do not use the terms "specific jurisdiction" or "general jurisdiction." Plaintiffs, however, have not argued that Defendants had any "continuous and systematic business contacts" with Illinois – and there is no evidence that Defendants had any such contacts – to support general jurisdiction. Rather, at most, Plaintiffs cite to a 2003 summary judgment opinion involving C&K Auto Imports, Inc. and state, with no citation, that "C&K Auto Imports sells and leases automobiles in Illinois and enters into contracts in Illinois," even though Defendants' certification contradicts these statements. (Resp. at 8.) The Court, therefore, addresses whether it has specific jurisdiction over Defendants.

the state, (2) the alleged injury must have arisen from the defendant's forum-related activities, and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice." *Id.* (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) (internal citation omitted)).

In ruling on a Rule 12(b)(2) motion, courts may consider matters outside of the pleadings. *See Purdue Research Found. v. Sanofi–Sythlabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003). When a district court determines a Rule 12(b)(2) motion based on the submission of written materials without holding an evidentiary hearing, the plaintiff must make a prima facie case of personal jurisdiction. *See uBID,* 623 F.3d at 423-24; *GCIU–Emp'r Ret. Fund v. Goldfarb Corp.,* 565 F.3d 1018, 1023 (7th Cir. 2009). Under such circumstances, the plaintiff bears the burden of establishing that personal jurisdiction exists. *See id.* at 423-24; *see also Bally Export Corp. v. Balicar, Ltd.,* 804 F.2d 398, 401 (7th Cir. 1986) ("Normally it is well established that the plaintiff must prove jurisdiction exists once it is challenged by the defendant."). In determining whether the plaintiff has met its burden, courts resolve all factual disputes in the plaintiff's favor. *See id.* at 423-24; *GCIU–Emp'r Ret. Fund,* 565 F.3d at 1020 n.1. Here, both parties submitted affidavits in support of their memoranda. The Court accepts as true any facts contained in the Defendants' affidavit that Plaintiffs do not refute, and resolves any conflicts in the affidavits in Plaintiffs' favor. *Purdue*, 338 F.3d at 783.

**B.     Due Process Under the United States Constitution**

Because "there is no operative difference" between jurisdiction allowed under the Illinois Constitution or the United States Constitution, the Court first addresses whether the exercise of personal jurisdiction would violate federal due process. *Mobile Anesthesiologists,* 623 F.3d at

443. For the Court to assert personal jurisdiction over Defendants, (1) Defendants must have purposefully availed themselves of the privilege of conducting business in the forum state or purposefully directed their activities at the state, (2) the alleged injury must have arisen from Defendants' forum-related activities, and (3) the exercise of jurisdiction must comport with traditional notions of fair play and substantial justice. *Burger King,* 471 U.S. at 472.

### 1. Defendants' Advertisement on AutoTrader.Com Does Not Establish Specific Jurisdiction

Plaintiffs argue that their cause of action "arose out of" Defendants' contacts with Illinois because "Defendants created and continue to maintain websites where Illinois residents can purchase vehicles online." (Resp. at 10.) Additionally, Defendants "advertise the sale of their vehicles through internet postings on the Auto Trader [website]." (*Id*. at 11.) Defendants also post links to their websites on other websites. (*Id*. at 11-12.) The only website relvant to the jurisdictional analysis, however, is AutoTrader.com because Mr. Sekigami initially contacted Defendants through AutoTrader.com. There are no allegations that Plaintiffs viewed or interacted with any other website associated with Defendants. Plaintiffs' injuries, therefore, could not have "arisen from" Defendants' potential contacts with Illinois through those other websites. *See uBID*, 623 F.3d at 429 ("As the Supreme Court has emphasized, it is essential not only that the defendant have minimum contacts with the forum state but also that the plaintiff's claim against the defendant 'arise out of or relate to' those contacts.")

The fact that Defendants utilize AutoTrader.com's nation-wide website, which Mr. Sekigami accessed in Illinois, does not, however, establish specific jurisdiction by itself. Specifically, Defendants' mere use of the AutoTrader.com website to advertise its vehicles does not establish that Defendants targeted the Illinois market as required to establish specific

jurisdiction.² *See e.g., be2 LLC v. Ivanov,* 642 F.3d 555, 558-59 (7th Cir. 2011) ("Beyond simply operating an interactive website that is accessible from the forum state, a defendant must in some way target the forum state's market."); *see also Mobile Anesthesiologists*, 623 F.3d at 446 ("A plaintiff cannot satisfy the [personal jurisdiction requirements] by showing that the defendant maintained a website accessible to residents of the forum state and alleging that the defendant caused harm through that website.").

First, there is not sufficient evidence, when viewed in the light most favorable to Plaintiffs, that Defendants directed their activity to Illinois via AutoTrader.com to support jurisdiction. Defendants merely utilize AutoTrader.com as a way to advertise their vehicles and to obtain leads about potential purchasers. They do not operate the website themselves. "The statements made by AutoTrader.com are completely outside of Defendants' control, authority, and knowledge." (R. 34, Reply at 1.) Indeed, there is no evidence that Defendants utilized AutoTrader.com to target consumers in the Illinois market. To the contrary, Defendants are not registered or licensed to do business in Illinois. (Sauer Cert. ¶¶ 3-4); *see, e.g., Mobile Anesthesiologists*, 623 F.3d at 446 (finding it significant that a doctor who worked for the defendant company which had a website accessible in Illinois was not licensed to practice medicine outside of Texas). In fact, Doron Sauer specifically states that Defendants "did not direct any of the contact information [on AutoTrader.com] to the State of Illinois nor did [they] advertise in the State of Illinois." (Sauer Cert. ¶ 7.) Notably, Plaintiffs do not contest this fact in

---

² The Court will not address Plaintiffs' arguments regarding the "sliding scale" of website interactivity proposed in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa.1997), because the Seventh Circuit has declined to adopt or reject this test for minimum contacts. *See, e.g., uBID*, 623 F.3d at 432 n. 2.

their affidavit. AutoTrader's website's search prompt also encourages visitors to find cars "near" them by entering the make of the car they would like to find and their zip code. *See* http://www.autotrader.com/ (visited June 3, 2013). The Vehicle was located in Florida and therefore was not near Plaintiffs.

There also is no evidence that, even though AutoTrader allowed Defendants to market their vehicles nation-wide, Defendants "intended to reach as large an audience as possible" including residents of Illinois. *uBID, Inc.*, 623 F.3d at 428. Indeed, unlike the defendant in *uBID* who placed physical ads in particular Illinois venues and whose nation-wide marketing campaign had "already created substantial business for [the defendant] in Illinois," there is no evidence that Defendants sought to sell their vehicles to anyone in Illinois or sold any vehicles in Illinois,[3] a state in which they are not licensed to do business. (*Id*; *see also be2LLC*, 642 F.3d at 559) (finding that the evidence did not show that the defendant internet dating website "deliberately targeted or exploited the Illinois market" even though a few Illinois residents has registered accounts on the website). There is no evidence, therefore, that Defendants targeted or exploited the Illinois market such that they availed themselves of the privilege of doing business in the state.[4]

---

[3] Notably, Plaintiffs attach as an exhibit a 2003 summary judgment opinion from a case in the Northern District of Illinois, *Gelco Corp.*, *v. C&K Auto Imports, Inc.*, No. 02 C 2584, 2003 WL 1220257 (N.D. Ill. Mar. 13, 2008), where C&K Auto Imports, Inc. was the defendant. (32-2, Ex. 2.) It not clear from that opinion, however, whether the sales at issue in that case occurred in Illinois. Moreover, even if Defendants had executed two agreements in Illinois over fifteen years ago, such agreements would not establish that Defendants utilized AutoTrader.com for this purpose or sought out business in Illinois, particularly because the Court does not know the circumstances surrounding the agreements at issue in *Gelco*.

[4] Plaintiffs also only cite to an unpublished 2003 opinion from a district court in Texas to support their contention that Defendants use of AutoTrader.com constitutes sufficient targeted

Second, even if Defendants had directed their activities toward Illinois via the AutoTrader.com website as Plaintiffs argue (Resp. at 10-13), there is not sufficient evidence, when viewed in the light most favorable to Plaintiffs, that Plaintiffs' claims "arise out of" those contacts. *uBID,* 623 F.3d at 429 (citing *Burger King*, 471 U.S. at 472-73). The Seventh Circuit teaches that the claim at issue must be sufficiently related to the contacts supporting jurisdiction for a court to exercise jurisdiction. *Id*. at 430. Notably, the Seventh Circuit has specifically rejected "but for" causation as the test for whether a claim sufficiently "arises out of" contacts with the forum state. *Id*. (citing *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1287 (7th Cir. 1997) (rejecting "but-for" causation in contract case, and recognizing that the "line will not always be a bright one")). Rather, the Seventh Circuit seeks to balance – to create a quid pro quo – where an out-of-state resident avails himself of the benefits and protections of doing business in the forum state in exchange for submitting to jurisdiction in the forum for claims arising from or relating to those activities. *Id*. (citing *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312 (3d Cir. 2007); *Burger King*, 471 U.S. at 475-76).

Here, the claims Plaintiffs allege do not "arise out of" Defendants' use of AutoTrader.com in a meaningful way for jurisdictional purposes, even though "but for" Defendants' advertisement, Plaintiffs would not have contacted Defendants and started the chain of events that resulted in this lawsuit. *Id*. Indeed, Plaintiffs did not purchase the Vehicle via AutoTrader.com or enter into a contract with Defendants for the Vehicle through AutoTrader.com. *Contra Ill. v. Hemi Grp. LLC*, 622 F.3d 754, 758 (7th Cir. 2010) (finding minimum contacts even though the sales contract occurred under the law of another state

---

conduct to warrant jurisdiction.

because defendants violation of Illinois reporting laws related to the sale of the cigarettes online to Illinois residents, not the contract itself). Rather, AutoTrader.com served as a middle-man, connecting Mr. Sekigami and Defendants after Mr. Sekigami expressed potential interest in the Vehicle. The website, therefore, served as a mere initial conduit of information. As the Court has previously noted, "it cannot plausibly be argued that any defendant who advertises nationally could expect to be haled into court in any state, for a cause of action that does not relate to the advertisements." *Brandon Wade Licensing, LLC v. Terezowens.com, LLC,* No. 12 C 9113, 2013 WL 1446356, at *4 (N.D. Ill. Apr. 9, 2013) (citing *IDS Life Ins. Co. v. SunAmerica, Inc*., 958 F. Supp. 1258, 1268 (N.D. Ill. 1997)). Here, the negotiations, representations about the vehicle,[5] and allegedly tortuous conduct occurred between Defendants and Mr. Sekigami directly, not through or involving AutoTrader.com. Plaintiffs' claims, therefore, did not "arise out of" Defendants' advertisements but out of Defendants' conduct which occurred after Plaintiff responded to their advertisement and began a business relationship. By comparison, in *uBID*, for example, the Seventh Circuit concluded that the claim bore sufficient relationship to the defendants' activities online because consumers would register and pay for services on that website which created contractual obligations at the heart of the lawsuit. *uBID*, 623 F.3d at 432. Defendants' advertisements on AutoTrader.com cannot serve as the basis for specific jurisdiction when Plaintiffs' claims did not arise out of their contact with that website.

---

[5] Plaintiffs do allege that Defendants made false representations about the Vehicle's mileage in their AutoTrader.com ad. (*See, e.g.,* SAC ¶¶ 20-23.) These allegations, however, are ancillary to Plaintiffs' claims which stem from representations made by Defendants directly to Mr. Sekigami and other causes of action stemming from Defendants' alleged inability to deliver the Vehicle as promised. Moreover, Plaintiffs allege that they became aware of Defendants' "mistake" about the mileage prior to closing the deal. *Id*.

### 2. Defendants' Brief Email Negotiations with Mr. Sekigami for the Purchase of a Vehicle Not Located in Illinois or Intended for Illinois Do Not Establish Jurisdiction

The fact that Defendants exchanged a series of emails a part of the negotiations – over a few days – with Mr. Sekigami, who was located in Illinois, also does not establish sufficiently targeted contacts to support jurisdiction, especially in light of the parties' course of dealings. Indeed, the Seventh Circuit has acknowledged that letters, phone calls and emails do not *always* establish minimum contacts for due-process purposes. *Id*. at 679; *see also Triad*, 2008 WL 4104357 at *4 ("Isolated telephone calls and emails by themselves may not be sufficient to provide a basis for asserting personal jurisdiction.") (citing *Abbott Labs., Inc. v. Bio Valve Techs., Inc*., 543 F. Supp. 2d 913, 921 (N.D. Ill. 2008)). Plaintiffs have not alleged or presented evidence that the parties negotiated the agreement over a significant period of time or that the parties anticipated that the agreement would be performed in Illinois. *See, e.g., Triad Capital Mgmt., LLC v. Private Equity Capital Corp*., No. 07 C 3641, 2008 WL 4104357, at *5-6 (N.D. Ill. Aug. 25, 2008) (finding jurisdiction because contacts were "not random, fortuitous, or attenuated" where the parties conducted "the intensive negotiations via telephone, email and fax" "over a contract that was to be executed and performed in Chicago"); *cf. Felland*, 682 F.3d at 676 n. 3 (noting that the defendant purposefully sent the emails at issue to Wisconsin residents knowing that they would most likely be read and have their effect in Wisconsin). Rather, Plaintiffs' allegations and Mr. Sekigami's affidavit indicate that the negotiations included a dozen or so emails, each consisting of only a few lines, exchanged almost exclusively between December 14-16, 2009. (Sek. Aff. ¶¶ 9-33.)

Moreover, phone calls and emails may serve as one type of contact, which, when combined with other contacts not present here, establish minimum contacts. In *Master Tech Prods., Inc. v. Smith*, for example, the court found that a telephone call allegedly in furtherance of a scheme to defraud was "a relevant contact" for personal jurisdiction purposes. 181 F. Supp. 2d 910, 912 (N.D. Ill. 2002). The *Master Tech* court, however, did not base jurisdiction on this phone call alone, but instead concluded that jurisdiction was proper based on the defendant's contacts with Illinois in their totality, including both his own and those attributed to him through his agents. *Id.* at 913. Here, Plaintiffs cite no other specific contacts which Defendants had with Illinois, other than through Autotrader.com, which Defendants did not use to target Illinois.

Additionally, when parties have a contract, a court "consider[s] the parties' prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing in determining whether there were sufficient minimum contacts." *Citadel Grp. Ltd. v. Wash. Reg'l Med. Ctr.*, 536 F.3d 757, 761 (7th Cir. 2008). Here, Defendants merely responded to Mr. Sekigami's inquiry via email, without any indication that they intentionally decided to send an email to an Illinois recipient or contemplated future consequences in Illinois stemming from the transaction with Mr. Sekigami. Although Mr. Sekigami listed an Illinois zipcode in his AutoTrader.com inquiry, he did not inform Defendants during the negotiations that he was a resident of Illinois or represented an Illinois corporation. Rather, he informed Defendants that Plaintiffs "were in the business of buying and reselling vehicles" for export purposes, and that he was purchasing the Vehicle for a customer. (SAC ¶¶ 113-114; R. 32-6, Ex. 6 at 4.) Mr. Sekigami specifically informed Defendants that he wanted to ship the Vehicle to Los Angeles. (Seg. Aff. ¶¶ 16-17.) Mr. Sekigami also instructed Defendants

to send the title for the Vehicle to a company in Jamaica, New York.  (Sauer Cert. ¶ 11.)  In fact, Defendants prepared to send the vehicle to Tokyo, Japan via air freight from John F. Kennedy Airport, New York.  (*Id.* ¶ 12.)  Indeed, it was Doron Sauer's "understanding that the Plaintiff is an agent/broker for an automobile dealer in Tokyo, Japan and the [V]ehicle was to be delivered directly from New Jersey to Tokyo, Japan without any contact with the State of Illinois, directly or indirectly."  (Sauer Cert. ¶ 14.)  Even viewing the evidence in the light most favorable to Plaintiffs, there is no indication that Defendants targeted Illinois or that they purposefully availed themselves of Illinois laws.

### 3. Defendants Would Not Have Foreseen Or Anticipated Litigation in Illinois

It also is not likely that Defendants would have anticipated being hauled into an Illinois court based on any of their limited interactions with Plaintiffs.  Here, Defendants do not conduct business in Illinois, did not specifically target Mr. Sekigami or any Illinois resident, and never intended or were instructed by Plaintiffs to deliver the Vehicle to Illinois.  Moreover, Defendants did not specifically reach out to Mr. Sekigami in Illinois.  Rather, as discussed above, Defendants merely responded to Mr. Sekigami's inquiry, via AutoTrader.com, about the Vehicle.  Defendants operated based on the understanding that Mr. Sekigami was purchasing the Vehicle for export, not for sale in or delivery to Illinois.  (32-6, Resp. Ex. 6 at 4.)  As explained above, Defendants understood that they would ship the Vehicle to Los Angeles or New York for final delivery in Toyko, Japan.  Defendants never anticipated that the Vehicle would enter Illinois and, in fact, it never did.  (Sauer Cert. ¶ 12.)  Mr. Sekigami was effectively a middle-man, who Defendants only began interacting with based on his inquiry to third party Auto Trader, and who happened to be sending emails from Illinois for a Vehicle which would never

touch Illinois. Under these circumstances, asserting personal jurisdiction over Defendants would offend "traditional notions of fair play and substantial justice." *See Int'l Shoe*, 326 U.S. at 316. Even viewing the undisputed facts in Plaintiffs' favor, therefore, they have not sufficiently made a *prima facie* case for the Court's jurisdiction over Defendants under the United States Constitution. Because Plaintiffs have not established that jurisdiction comports with due process, the Court need not address whether the jurisdiction would comport with the Illinois long-arm statute. The Court, therefore, grants Defendants' motion to dismiss for lack of personal jurisdiction without prejudice.[6]

## II.     Venue, *Forum Non Conveniens*, Indispensable Party

Because the Court finds that Plaintiffs have not established the Court's jurisdiction over Defendants, the Court need not address Defendants' venue or *forum non conveniens* arguments. The Court also need not address Defendants' motion to dismiss pursuant to Rule 12(b)(2) for failure to join an indispensable party.

---

[6] Notably, the C&K defendants filed a case in the Superior Court of New Jersey against Plaintiffs and various Mercedes Benz entities regarding the transaction and much of the conduct at issue in Plaintiffs' Second Amended Complaint. (*See* R. 28-3, N.J. Complaint.) Both C&K entities are New Jersey corporations with their principal places of business in New Jersey. (*Id.* ¶ 1.)

16

## CONCLUSION

For the foregoing reasons, the Court dismisses Plaintiffs' Second Amended Complaint without prejudice.

**DATED: June 21, 2013**

ENTERED

_____
**AMY J. ST. EVE**
**United States District Court Judge**
